**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BARBARA WOODRUFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 02311 |
| | ) | |
| HUMANA PHARMACY INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION ORDER</u>

Plaintiff Barbara Woodruff sued Humana Pharmacy, Inc., in the Circuit Court of Cook County, alleging that negligence in the untimely filling and shipping of her mail-order prescription drugs caused her to have a stroke. Humana removed the case to this Court, arguing that any negligence claim is completely preempted by the Medicare statute and therefore belongs in federal court, *see* 28 U.S.C. §1441, and alternatively that Humana is entitled to removal as a "federal officer" with a federal defense to liability, *see* 28 U.S.C. §1442(a). Humana further contends this Court must dismiss the case because Woodruff failed to exhaust her administrative remedies; that argument is the subject of a separate motion to dismiss. Woodruff now moves to remand to state court, arguing that her claim for damages for personal injuries is not a claim for Medicare benefits and that federal officer removal does not apply.

### A. Federal Officer Removal

Humana, a private insurer, is a Medicare Advantage Part D[1] prescription drug provider that contracts with the Centers for Medicaid and Medicare Services ("CMS"), a federal agency, to administer Medicare's prescription drug benefit. Because Humana's "negligent" conduct

---

[1] Part D is Medicare's prescription drug benefit program. See 42 U.S.C. § 1395w–115. Humana is a Prescription Drug Plan ("PDP") sponsor.

alleged in the state-court complaint is the belated filling and shipping of refill prescriptions—one of its delegated duties—Humana contends that the case is removable under the federal officer removal statute, which provides for the removal of actions against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1). According to Humana: "As an approved and fully authorized Medicare Advantage prescription drug provider, [Humana] acts under the direction, governmental supervision, and control of the Secretary, through CMS, to administer Medicare Advantage Part D benefits to members, including Barbara Woodruff, subject to the strict rules and guidelines of the Medicare Act," and therefore qualifies as a "federal officer" within the meaning of the removal statute. Mem., Dkt. # 15 at 4. Woodruff, on the other hand, contends that the federal officer removal statute does not condone removal of this case because, among other things, there is no connection between plaintiff's claim and the action by Humana performed under the color of federal law.

Under the federal officer removal statute, a removing defendant must show that it is a (1) "person" (2) "acting under" the United States, its agencies, or its officers (3) that has been sued "for or relating to any act under color of such office," and (4) has a colorable federal defense to the plaintiff's claim. 28 U.S.C. § 1442(a); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-81 (7th Cir. 2012) (citing *Mesa v. California*, 489 U.S. 121, 132-34 (1989)). The plaintiff argues that Humana fails to meet all but the first criteria.

As to the "acting under" prong, the Court disagrees. "Cases in which the Supreme Court has approved removal involve defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Ruppel*, 701 F.3d at 1181 (further explaining that "'[a]cting under' covers situations . . . where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."). Because the Secretary has delegated the task of administering prescription drug benefits to PDP sponsors like Humana, Humana acts under the authority of a federal officer. Humana is not merely complying with federal law—such as those requiring testing of products, *see Watson v. Philip Morris Cos*., 551 U.S. 142, 151 (2007)—but assisting the federal government in carrying it out, *see Kelly v. Martin & Bayley, Inc*., 503 F.3d 584, 587 (7th Cir. 2007) (explaining that a private person acts under federal law when assisting or carrying out the duties of the federal officer). This not just a highly regulated industry, which is insufficient to support "acting under" status; Humana, a PDP sponsor with authority delegated by CMS, a federal agency, is a part of the federal bureaucracy that administers Medicare Part D.

As to the third element, however, an entity acts "under color of" federal authority only when its challenged actions were derived from its official duties. *Ruppel*, 710 F.3d at 1182. There must be a "causal connection" between the allegedly tortious conduct and the official authority of the removing defendant. The "under color of" element is analogous to a "scope of employment" inquiry. *See* 14B Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 3726 at 245 (4th ed. 2009). Here, Humana's federal duties are to administer prescription drug benefits to Medicare patients. Yet Humana does not contend that CMS controls the manner in which Humana provides prescription drug refills; there is nothing to suggest that the manner of physically providing drugs to consumers is controlled by CMS or any federal

agency. *See Orthopedic Specialists of N.J. PA v. Horizon Blue Cross / Blue Shield of N.J.*, 528 F. Supp. 2d 128, 137 (D.D.C. 2007) (explaining, in promissory estoppel case against insurer, that "It is [the] act of purportedly erroneous pre-authorization over which a federal agency or officer must have exercised 'direct and detailed' control if this Court is to exercise jurisdiction over Defendant under the federal officer removal statute."). Humana refers generally to "strict rules and guidelines" to which it is subject but does not cite even one that pertains to the manner in which it fills and delivers prescriptions.[2] In short, Humana fails to support the implausible proposition that any federal regulations or "strict rules and guidelines" are causally connected to its manner of and timeline for processing Woodruff's prescription refills. The plaintiff's claims simply do not implicate actions by Humana "under color" of its role as an ersatz agent of the federal government.

Even assuming *arguendo* that Humana also has a colorable federal defense (such as failure to exhaust), then, it has not shown that it was acting under color of federal authority when it filled and shipped the plaintiffs' refills. This result is consistent with the purpose of federal officer removal. In the case of this contractor, there is no reason to believe there is danger of state court "prejudice" against this company; nor is a state-court lawsuit likely to disable or deter

---

[2] Where the parties are "at odds about what (if any) directions" a federal officer issued to Humana, this Court "cannot accept [Humana's] say-so and use that as the basis of removal"; rather, "[d]isputes about jurisdictional facts must be resolved after a hearing under Fed. R. Civ. P. 12(b)(1)" at which the court "must receive evidence, make appropriate findings, and then either retain or remand the case as the facts require." *Pollit v. Health Care Service Corp.*, 558 F.3d 615, 616 (7th Cir. 2009). Neither party has requested such a hearing nor any discovery as to the issue of what, if any, federal directives control how Humana fills prescriptions for its plan members. Indeed, the Medicare Act expressly prohibits federal intervention—including "supervision or control"—over the provision of medical services. 42 U.S.C. § 1395. Humana's cursory reference to the federal control to which it claims to be subject does not entitle it to an evidentiary hearing, particularly where the burden of establishing removability has been with Humana all along, and any applicable federal directives would have been known to Humana to cite in support of its arguments.

a federal actor from taking necessary action; nor is there any federal claim of immunity that is forestalled by proceeding in state court. *See Watson v. Philip Morris Companies, Inc.,* 551 U.S. 142, 153 (2007). With none of these purposes of federal-officer removal at stake, it does not make sense to interpret the "under color of" element broadly enough to include the type of private action at issue here. And indeed, the Supreme Court has cautioned that federal-officer immunity is not meant to apply whenever a state-court action is filed against a private firm in a highly regulated industry. *See id.*

Accordingly, the Court concludes that the federal officer removal statute does not permit removal of this case.

## B.     Complete Preemption

Humana alternatively contends that this case is removable under the general removal statute, § 1441, because federal law completely preempts state law with respect to claims for Medicare benefits. Ordinarily, the existence of a federal defense—such as preemption—does not permit removal, but complete preemption is an exception to that rule. *Pollitt v. Health Care Service Corp.*, 558 F.3d 615, 616 (7th Cir. 2009); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393. When complete preemption applies, federal law provides the exclusive cause of action for the claim asserted, no matter how it is labelled.

As an initial matter, Woodruff takes the position that Humana has abandoned its complete preemption argument by not addressing it in its response to her motion to remand. *See* Reply, Dkt # 18 at 1-2. The Court agrees. Humana amended its notice of removal to add federal-

officer removal as a basis for removal, Dkt. #7, and although it also included its argument that the case was removable under § 1441 because this Court has original jurisdiction under § 1331 due to the claim arising under the Medicare Act rather than Illinois common law in the notice, it failed to respond at all to Woodruff's argument that her state law claim was not preempted and that removal under § 1441 was therefore improper. Instead, Humana's response to the remand motion maintains that it "properly removed" the case pursuant to the Federal Officer Removal Statute and "other alternative grounds." Mem., Dkt # 15 at 2. It does not identify any "other alternative grounds," however, and develops no argument concerning complete preemption. Thus, Humana has waived its argument that complete preemption permits removal under § 1331. *See, e.g., C&N Corp. v. Kane*, ---F.3d---, 2014 WL 2854487, at *2 (7th Cir. June 24, 2014) (failure to make argument in response to summary judgment motion constituted waiver; "we will not find that an argument was adequately preserved solely because a party's opponent defended against the argument"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver."). Complicating this analysis, however, is the fact that federal jurisdiction does not depend on the parties' complicity; "the jurisdiction of the court cannot be conferred by consent, and cannot in a certain sense be defeated by waiver." *Adkins. v Illinois Central R.R. Co.*, 326 F.3d 828, 833 (7th Cir. 2003) (discussing, but not resolving, the question of whether waiver of a complete preemption argument deprived the court of jurisdiction).

The Court need not definitively resolve the question of whether Humana's waiver of a complete preemption argument deprives this Court of jurisdiction, however, because the Court would not have jurisdiction even if the preemption argument has not been waived —indeed, even if it is correct. Humana's notice of removal asserts that § 1331 provides the basis for original

federal jurisdiction because the claim arises under the Medicare Act. Dkt. #14-3 at ¶ 6 ("the complaint asserts claims arising under ... the Medicare Act"). But if the claim does arise under the Medicare Act, then § 1331 *cannot* be the basis of jurisdiction. Under 42 U.S.C. § 405(g) and 405(h), the procedure for judicial review of a decision of the Secretary of Health and Human Services[3]—the very procedure that Humana contends Woodruff improperly bypassed—is the "sole avenue" for claims arising under the Medicare Act, "*to the exclusion of 28 U.S.C. § 1331.*" *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (emphasis added). Section 405(g) sets forth a judicial review process, and section 405(h) provides: "No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." That sentence has been held to be more than a requirement of administrative exhaustion; it deprives the district courts of federal-question jurisdiction. *See Weinberger v. Salfi*, 422 U.S. 749, 758-60 (1975).[4] In other words, the statute "strips" the federal courts of primary federal-question jurisdiction for cases arising under the Medicare Act. *Cochran v. U.S. Health Financing Admin.*, 291 F.3d 775, 779 (11th Cir. 2002); *see Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 440 (7th Cir. 2005) (explaining that claims arising under the Medicare Act must "take a different route" to federal court than general federal-question jurisdiction). And since removal

---

[3]    Section 405 is part of the Social Security Act (and therefore refers to "the Commissioner of Social Security" as the final administrative word), but 42 U.S.C. § 1395ii adopts § 405(h) as to Medicare claims; and 42 U.S.C. § 1395ff(b)(1) does the same as to § 405(g).

[4] Thus, administrative exhaustion in this context is, by statute, jurisdictional and therefore distinguishable from requirements of administrative exhaustion in other contexts, which have been held to be non-jurisdictional and waivable. *See, e.g., Gray v. United States*, 723 F.3d 795, 798 (7th Cir. 2013) (explaining, in suit against IRS for damages, that applicable statute "contains no language suggesting that Congress intended to strip federal courts of jurisdiction when plaintiffs do not exhaust administrative remedies"); *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012) (explaining as to Federal Tort Claims Act that "the Act's requirement of exhausting administrative remedies is not jurisdictional," and therefore "it can be waived or forfeited, or otherwise forgiven").

under § 1441 is permitted only where the district court would have original jurisdiction over the case, *see Caterpillar*, 482 U.S. at 392, removal is not permitted when the federal court does not have jurisdiction of a claim—as it would not with a claim arising under the Medicare Act that has not been the administratively exhausted.[5]

It is difficult to imagine how the plaintiff could present her claim against Humana for negligent delay in filling her prescription to the Secretary for adjudication and a final decision in the first instance, but that only goes to show that there is not a persuasive argument that the claim is preempted. "A claim 'arises under' the Medicare Act when both the standing and the substantive basis for the presentation of the claims stem from the Medicare Act." *Ancillary Affiliated Health Servs. v. Shalala*, 165 F.3d 1069, 1070 (7th Cir. 1998) (internal quotation marks and citations omitted). The cases that discuss Medicare exhaustion look at *payment* decisions: that is, whether the plaintiff is, at bottom, making a claim for benefits, such as complaining about the lack of coverage for some service or a claim for payment, such as a by a provider seeking reimbursement. But Woodruff received her benefits —federally subsidized prescription drugs, which she obtained pursuant to her Part D plan with Humana. She is not seeking an injunction or declaration regarding the coverage provided by Humana, nor is she attempting to be reimbursed for out-of-pocket expenses that she believes should have been covered. She alleges that Humana negligently failed to fill and deliver her medications in a timely way, causing her to suffer a

---

[5] In *Ringer*, the Court acknowledged that there could be a limited exception to the jurisdictional requirement of complete exhaustion for claims arising under the Medicare Act, where the claim is "wholly collateral" to a claim for benefits. *See* 466 U.S. at 618. That exception does not appear to apply here, however, because it extends only to the requirement of "complete" exhaustion; the collateral nature of the claim does not excuse the threshold requirement of presentation of the claim to the Secretary for an initial decision. *See Mathews v. Eldridge*, 424 U.S. 319, 330-32 (1976). That requirement is non-waivable, *id.* at 330, and has not been met here, so the exception—which might excuse the requirement to use every available avenue of internal review—has no application.

stroke. That is not something she can bring before the Secretary for a "final decision" (as to what?) that may then be challenged in court under § 405's judicial review procedure. A lawsuit against the Secretary would be inapt when the underlying claim is "wholly collateral" to any decision on a claim for benefits. *Cf. Heckler,* 466 U.S. at 614 (explaining that the plaintiffs' claims were not wholly collateral to a statutory scheme of administrative and judicial review of Medicare payment decisions, because their constitutional and statutory challenge to the procedure for reaching payment decisions was "at bottom" an attempt to reverse the agency's decision to deny payment).

In that sense the case is analogous to *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496 (9th Cir. 1996), in which the Ninth Circuit answered "no" to the question whether section 405(h) applied "to preclude the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider when those claims do not seek recovery of Medicare benefits but instead seek compensatory and punitive damages on the grounds that the provider both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary." *Id.* at 499. The Court held that the plaintiffs' claims were not inextricably intertwined with the denial of benefits, *id.* at 499-500, and it further noted that that the "removal of the right to sue the private Medicare provider for its torts would result in an inequitable and substantial dilution of the rights of patients," *id.* at 501.

Thus, either: (1) Woodruff's claim arises under the Medicare Act (as Humana contends), and this Court lacks subject-matter jurisdiction because §1331 is abrogated and this is not a suit against the Secretary for review of a final administrative decision; or (2) the claim does not arise under the Medicare Act (as Woodruff argues), and this Court lacks subject-matter jurisdiction because there is no basis such as diversity for bringing her state-law claim in federal court. Either

way, removal under § 1441 is not proper. *See Dial v. Healthspring of Alabama, Inc.*, 541 F.3d 1044, 1047-48 (11th Cir. 2008).

\* \* \*

Because Humana has failed to establish that either the federal officer removal statute or the general removal statute provide a basis for removing Woodruff's purported negligence claim, Woodruff's motion to remand is granted. Humana's motion to dismiss is denied as moot.

Date: August 29, 2014

_____
John J. Tharp, Jr.
United States District Judge